**In re C & L COUNTRY MARKET OF NEW MARKET, INC., Debtor.**

**Bankruptcy No. 83–04159G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 21, 1985.

James D. Coleman, Kevin C. O'Malley, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Head House Venture, movant.

Donald M. Collins, David C. Corujo, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for the trustee, Samuel Brodsky.

Samuel Brodsky, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue presented for resolution in the case before us is whether we should sustain the trustee's objection to a request for the allowance of administrative expenses for the rental of premises used to preserve the assets of the estate. For the reasons stated herein, we will grant partial relief on the objection and allow the administrative expenses only to the extent of the value of the estate property preserved on the premises.

The facts of this case are summarized as follows: [1] An involuntary petition for relief under chapter 7 of the Bankruptcy Code ("the Code") was filed against the debtor on which we subsequently entered an order for relief. Soon afterward an interim trustee was appointed.

Prior to the filing of the petition the debtor had been operating on a parcel of realty which two of its principals had leased from Head House Venture ("the

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

Landlord"). Shortly before the filing of the petition the debtor quit the premises leaving much of its equipment and assets behind.

After significant delay by both the trustee and the Landlord, the assets remaining on the premises were removed to other quarters and sold at auction for $7,000.00. During the period for which the assets remained on the leasehold, unpaid rent would have accrued in the amount of $44,-081.67 had the lease between the Landlord and the debtor's principals been in force for the entire time.

Moving to our discussion, administrative expenses may be allowed pursuant to 11 U.S.C. § 503(b)(1)(A) of the Code which authorizes such claims for the actual and necessary costs and expenses of preserving the estate.[2] Allowable expenses include the rental of premises to preserve the debtor's movable assets. 3 *Collier on Bankruptcy* ¶ 503.04, pp. 503–16 to 503–18 (15th ed. 1985). In this case the improvements on the leasehold shielded the debtor's assets from vandalism and the elements.

Since the debtor did not assume the lease with the Landlord within the meaning of 11 U.S.C. § 365 of the Code, the amount of the administrative expense is limited to the "actual, necessary costs and expenses of preserving the estate. . . ." § 503(b)(1)(A); *Philadelphia Co. v. Dipple*, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941); *In Re Universal Medical Services, Inc.*, 357 F.Supp. 1137 (E.D.Pa.1973).

■ The trustee asserts that since he did not assume the lease within the 60 day

period following the entry of the order for relief, the lease is deemed rejected and no further liability to the estate may accrue under that lease. § 365(d)(1).[3] We conclude that this position is without merit. First, § 365(d)(1) only governs the automatic rejection of executory contracts and leases with the *debtor*. In the case before us the lease was between the debtor's principals and the Landlord and not with the debtor. Thus, § 365(d)(1) is inapplicable. Second, the Landlord is not predicating its claim on the terms of the lease but rather on the language of § 503(b)(1)(A). Even in the absence of a lease or contract between a claimant and the debtor, a claimant who meets the qualifications of § 503(b)(1)(A) is properly entitled to the allowance of an administrative expense under this provision.

■ In calculating the amount of an administrative expense, "[a]bsent any evidence to the contrary, the court may presume that the contractual rent is a fair and reasonable charge for the use of the premises." *In Re Gourmet Gallery, Inc.*, 27 B.R. 912, 915 (Bankr.E.D.Pa.1983); *see also, S & W Holding Co. v. Kuriansky*, 317 F.2d 666 (2nd Cir.1963); *Diversified Services, Inc. v. Harralson*, 369 F.2d 93 (5th Cir.1966); *In re Standard Furniture Co.*, 3 B.R. 527 (Bankr.S.D.Ca.1980); 3 *Collier on Bankruptcy*, ¶ 503.04, pp. 503–16 to 503–18 (15th ed. 1985).

■ If we applied this presumption to the case at bench, we would reach the anomolous conclusion that the actual, nec-

---

2. § 503. Allowance of administrative expenses
  (a) * * *
  (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
  (1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
  *    *    *    *    *    *
  11 U.S.C. § 503(b).

3. (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.
  11 U.S.C. § 365(d)(1). This provision was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, July 10, 1984, but the amendment is without effect in this action since the petition was filed prior to the running of the 90 day transition period following the enactment of the statute. Thus, we have reproduced § 365(d)(1) as it stood prior to the amendment.

essary costs and expenses of preserving $7,000.00 worth of assets was $44,081.67. We conclude that this construction strains beyond reason the rationale underlying the presumption. We hold, that in the absence of countervailing circumstances, the actual, necessary costs and expenses of preserving assets of the estate under § 503(b)(1)(A) cannot exceed the value of those assets. This result is in accord with case law such as *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir.1960), in which the court stated:

> [T]he measure of compensation to which the lessor is entitled is not the amount due under the contract or lease but the *fair value of the benefit conferred* upon the estate ... [T]he purpose of according priority in these cases is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, *rather than the compensation of the creditor for the loss to him.*

280 F.2d at 126 (emphasis added).

Rather than merely diminish the Landlord's claim the trustee asks that we disallow it on the equitable ground that the Landlord was uncooperative with the trustee in his efforts to sell the assets. Our review of the evidence reveals that each of the parties was equally disinclined to exert the fullest measure of effort to bring the removal and sale of the goods to fruition. In such a situation it has long been held that the award of equitable relief on the basis of another's improper conduct, is inappropriate when both parties are equally culpable. *See, e.g., Usaco Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir.1982); *Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.*, 95 F.2d 978, 983 (6th Cir.1937); *appeal dismissed*, 306 U.S. 665, 59 S.Ct. 460, 83 L.Ed. 1061 (1939); *see, also, Tarasi v. Pittsburgh National Bank*, 555 F.2d 1152, 1156–57 (3d Cir.1977), *cert. den.*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977) (companion doctrine in law of *in pari delicto* ).

We will accordingly enter an order granting the Landlord an administrative expense of $7,000.00 (the amount the debtor's goods brought at auction).